**FIFTH AMENDED ANSWERS TO KRUKOWSKI'S INTERROGATORIES BY PLAINTIFF, DIANNE LEVESQUE, as Personal Representative of the ESTATE OF DONALD WHITMER, JR.**

1. What is your full name (including any maiden names, middle names, or middle initial, if any), address, date of birth, social security number, your relationship to the Decedent?


Dianne Levesque
2275 Starlight Court, #297, West Melbourne, Florida 32904
11/14/1966
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
Former girlfriend

2. Please state the decedent's full name, date of birth, social security, and his age and address at the time of his death.


Donald Edward Whitmer, Jr. December 3, 1972 558-
49-5540
45 YOA
770 Wildbriar Road NE, Apt. #208, Palm Bay, Florida 32901

3.      List all former names and nicknames for the Decedent, and when he was known by those names. State all addresses where the Decedent lived for the past ten years, the dates he lived at each address.

Donald Edward Whitmer, Jr. His nickname was "Donnie."

He lived with me at 770 Wildbriar Road NE, Apt. #208, Palm Bay, Florida 32901 at the time of his death.

Donnie was often very transient and lived in hotels and moved around a lot in between Florida and Ohio.

I do not know any more information than this. To put this answer in perspective, I met Donnie in 2012.  All of the survivors lived with Donnie's parents in Ohio, except Breana, who came to live with us for a period of time in 2015 in Florida.   All of the survivors were raised by Donnie's parents, and they, to my knowledge, do not know and are not able to assist in the answering of this question. Therefore, I do not know the answer to this question, and I do not know how I could obtain the information.

4. Was the decedent ever married? If so, please state the names, addresses, and telephone numbers of all the decedent's past spouses, including the dates of the beginning and end to each marriage. If the decedent was married on the date of his passing, please give the details of this marital relationship, including whether there have been any separations, marital counseling and/or court actions.

Yes, he was married to Bobbie Lee Whitmer from 1993 to her death on March 21, 2010.

5.     State the full names, relationships to the decedent, addresses, ages, telephone numbers, Social Security Numbers, and dates of birth of all surviving heirs and descendants of the decedent, including decedent's spouse, children, parents, siblings, blood relatives (part or whole), adopted brother/sisters, adopted children, and any and all illegitimate children of either the decedent or his spouse.

Breanna Whitmer (child); SSN: 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; 2275 Starlight Court, #297, West Melbourne, Florida 32904; DOB: 7/8/1998

Nicholas Whitmer (child); SSN: 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; 68 State Road 258, Newcomerstown, Ohio 43832; DOB: 9/23/2002

Donald Whitmer, III (child); SSN: 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; 2670 Benell Avenue, Columbus, Ohio; DOB: 10/18/1995.

Dakota Whitmer (child); SSN: 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; 2712 Larson Road SE, Gnadenhutten, Ohio; DOB: 9/23/2002

Tommi Whitmer (child); SSN: 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; 144 Schryver Road, Columbus, Ohio 43207; DOB: 4/26/1993

Trey Whitmer (child); 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; 133 Wrexham Avenue, Columbus, Ohio 43223; DOB: 4/26/1993

Brittony Whitmer (child); SSN: 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; 133 Wrexham Avenue, Columbus, Ohio 43223; DOB: 7/21/1993

I do not know any other information at this time.

6.     Describe in detail how the incident(s) referenced in the Amended Complaint happened, including all actions taken by Donald Whitmer, Jr. to prevent the incident(s). (Reference to your Amended Complaint is not a sufficient answer since the Amended Complaint is not sworn to nor is it ordinarily admissible as evidence).

I was not present I watched the video, and Donald did nothing wrong, bystanders begged the cops to calm down, instead the officer's choked Donnie to death after tasing him.

7. Did the Decedent die testate? If so, please state the names and addresses of the beneficiaries and the participation granted each under the will.

No, he did not have a will.

8. State the money value of the Decedent's estate and Decedent's net worth on the date of his death.

I am only aware of the approximately $17,000 that he had in his possession when he died. Donnie received this money as an inheritance from his father when he died.

I do not know any more information. To put this answer in perspective I met Donnie in 2012. All of the survivors lived with Donnie's parents in Ohio, except Breana, who came to live with us for a period of time in 2015 in Florida. All of the survivors were raised by Donnie's parents, and they, to my knowledge, do not know, and are not able to assist in the answering of this question. Therefore, I do not know the answer to this question, and I do not know how I could obtain the information.

9.      Please state the money value of whatever you, and any of the alleged beneficiaries, each reasonably expected to receive from the Decedent had he lived his normal life expectancy.

I do not know. To put this answer in perspective, I met Donnie in 2012. All of the survivors lived with Donnie's parents in Ohio, except Breana, who came to live with us for a period of time in 2015 in Florida. Donnie's parents raised all of the survivors, and they, to my knowledge, do not know and are not able to assist in the answering of this question. Therefore, I do not know the answer to this question, and I do not know how I could obtain the information.

10.     Other than his earnings or other income generating activities, did the Decedent have any other independent sources of income prior to his death? If so, please state the source, yearly amount and whether or not said income continued after his death to you or to his estate?

I do not know of any. To put this answer in perspective, I met Donnie in 2012. All of the survivors lived with Donnie's parents in Ohio, except Breana, who came to live with us for a period of time in 2015 in Florida.  All of the survivors were raised by Donnie's parents, and they, to my knowledge, do not know and are not able to assist in the answering of this question. Therefore, I do not know the answer to this question, and I do not know how I could obtain the information.

11. Please state what policies of insurance covered the Decedent on the date of his death, including the name of the insurer, a description of type of policy, the amount of proceeds paid or payable, and the name and address of the beneficiary

None.

12. Approximately what portion, if any, of the Decedent's earnings were used to support himself? What portion was used to support each of his survivors in the ten (10) years prior to his death?

I do not know.

13. What, if any, savings, either in money or assets, had Decedent accumulated prior to his death? If any, identify each savings account or other asset in name, type and location.


I do not know of any other than the amount previously stated. To put this answer in perspective I met Donnie in 2012. All of the survivors lived with Donnie's parents in Ohio, except Breana, who came to live with us for a period of time in 2015 in Florida. All of the survivors were raised by Donnie's parents, and they, to my knowledge, do not know, and are not able to assist in the answering of this question. Therefore, I do not know the answer to this question, and I do not know how I could obtain the information.

14. Describe the services and support the Decedent rendered during the last ten (10) years of his life, if any, to any survivors.

Donnie would take care of his children when they came to visit on the weekends in Ohio and then occasionally in Florida. He would provide food, clothing and take them to the movies and other activities when he was with them. To put this answer in perspective I met Donnie in 2012. All of the survivors lived with Donnie's parents in Ohio, except Breana, who came to live with us for a period of time in 2015 in Florida, who Donnie supported. All of the survivors were raised by Donnie's parents, and they, to my knowledge, do not know, and are not able to assist in the answering of this question any more than what I have provided.

15. List each item of expense, to include medical or funeral expenses, that the Decedent, his personal representative or estate, claimed to have incurred as a result of the injuries or death sued on in this action; giving for each item the date incurred, to whom owed or paid and the services for each was incurred.

Burial expenses; $1,242.00; May 2018; paid by Breanna Whitmer

Transport for independent autopsy; $500.00; May 2018; paid by John Vernon Moore

Independent autopsy; $2,400.00; June 2018; paid by John Vernon Moore

Brevard County Fire Rescue; $861.75; May 2018; unpaid

Homes Regional Medical Center; amount unknown at this time; May 2018; unpaid

More expenses may be supplemented as they become known.

16. Please state each item of damage that you claim, whether as an affirmative claim or as a setoff, and include in your answer: (a) the claim to which the item of damages relates; (b) the category into which each item of damages falls, i.e. general damages, special or consequential damages (such as lost profits), interest, and any other relevant categories; (c) the factual basis for each item of damages; (d) an explanation of how you computed each item of damages, including any mathematical formula used; and, (e) identify each document pertaining to each item of damages stated.

   A. Punitive Damages: 1,000,000 because it is extreme and outrageous for an officer to choke Donald to death for no reason, while a crowd is begging the officer to stop.
   B. Loss of support and services: $500,000 per survivor, which I think is more than fair and reasonable for the homicide of a parent at the hands of law enforcement officers.
   C. The evidence for this is contained on the video that I viewed.

17. Describe in detail each act or omission on the part of this Defendant that you contend constituted a violation of the Decedent's rights under the Fourth Amendment.

Officer Mathis and Krukoski either used excessive force or allowed the excessive force to be used in the arrest, tasking, choking and strangulation of Donnie, causing Donnie's death. There are numerous videos of the incident which I would refer you to. They also ignored witnesses pleas to stop choking Donnie, causing his death. Ignoring these pleas is evidence of reckless indifference.

18. State whether you, your attorneys, employees, agents or servants have obtained any statements from anyone with regard to the incident forming the subject matter of this lawsuit and, if so, state whether oral or written, the names and addresses or information or the location of such persons, and dates these statements were obtained.

None.

19. Did the Decedent consume any alcoholic beverages or take any drugs or medications (including prescription and over-the-counter drugs) within 12 hours before the incident described in the complaint? If so, what type and amount of alcoholic beverages, drugs or medications were consumed and where did the Decedent consume them?

I was not a witness to him consuming anything, and as far as I know nor did Breana, as Donnie did not stay with us the night before his death.

20. Was the Decedent suffering from any physical infirmity, disability, or sickness at the time of the incident described in the Amended Complaint? If so, what was the nature of the infirmity, disability, or sickness?

He had heart problems and bi-polar disorder.

21. Please specify each and every fact which supports your allegations that Defendants Mathis and Krukoski located a "confused and frightened" Decedent as alleged in Paragraph 20 of Plaintiff's Amended Complaint.

Donnie can be seen in the video obviously confused and frightened by speaking on the phone to someone claiming "she" said "you (the officers)" are going to hurt me.

Donnie was clearly confused when he believed he saw his daughter in the parking light and officer Krukoski tells him "no one is there."

Throughout the interaction with law enforcement he appears that Donnie felt as though he believed officers would be overly aggressive and disregard any information, he provided them. He was never given respect from the officers, was belittled and shouted out that would warrant the response from officers.

22. Please specify each and every fact which supports your allegations that this Defendant was "recklessly indifferent to the rights of the Decedent and willfully failed to intervene on behalf of the Decedent … and instead, made the decision to use his taser device to subdue the Decedent…" as alleged in Paragraph 22 of Plaintiff's Amended Complaint.

Officer Mathis and Krukoski either used excessive force or allowed excessive force to be used in the arrest, tasing, choking and strangulation of Donnie, causing Donnie's death. There are numerous videos of the incident which I would you refer to. They also ignored witnesses pleas to stop choking Donnie causing his death. Ignoring these pleas is evidence of reckless indifference

23. Please specify each and every fact which supports your allegations that this Defendant used excessive, unnecessary, and unreasonable force as alleged in Paragraph 32 of Plaintiff's Amended Complaint.

Officer Mathis and Krukoski either used excessive force or allowed excessive force to be used in the arrest, tasing, choking and strangulation of Donnie, causing Donnie's death. There are numerous videos of the incident which I would you refer to. They also ignored witnesses pleas to stop choking Donnie causing his death. Ignoring these pleas is evidence of reckless indifference.

*Dianne Levesque*
DIANNE LEVESQUE

STATE OF FLORIDA     )
                     ) SS:
COUNTY OF BREVARD    )

BEFORE ME, the undersigned authority, personally appeared, DIANNE LEVESQUE, who, after being duly sworn, deposes and states that he is the individual who has answered the foregoing and that said answers are true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me this 26th day of AUGUST, 2020.

*[Notary seal: MARIANNA M. ESPOSITO, Notary Public - State of Florida, Commission # GG 346774, My Comm. Expires Oct 15, 2023, Bonded through National Notary Assn.]*

*Marianna Esposito*
Notary Public

MARIANNA M. ESPOSITO
Printed Notary Signature

Personally Known ___ OR Produced Identification
Type of Identification Produced: FL DL