UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIANNE LEVESQUE, as Personal Representative of the Estate of Donald Whitmer, Jr.,

    Plaintiff,

v.

CITY OF WEST MELBOURNE, JACOB MATHIS, and KEVIN KRUKOWSKI,

    Defendants.
_____/

Case No. 6:19-cv-2187-Orl-40DCI

**DEFENDANT CITY OF WEST MELBOURNE'S MOTION FOR ORDER COMPELLING DOCUMENT PRODUCTION FROM NON-PARTY AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, Defendant City of West Melbourne (the "City"), by and through its undersigned attorney, hereby files and serves its Motion for Order Compelling Document Production from Non-Party and Incorporated Memorandum of Law.

### A. *Alleged Factual Background and Pending Claims*

Plaintiff Dianne Levesque is the Personal Representative of the Estate of Donald Whitmer, Jr. (Doc. 30 ¶ 7). Plaintiff alleges that on May 21, 2018, the decedent was involved in physical altercation with law enforcement officers at a Publix Supermarket located at 2261 West New Haven Avenue in West Melbourne, Florida. (*See* Doc. 30 ¶¶ 14, 21-22). Plaintiff alleges that one of the decedent's daughters, Breanna Whitmer, and her infant son were present during the alleged subject incident. (*See* Doc. 30 ¶ 14). Plaintiff alleges that the law enforcement officers involved violated the decedent's right under the Fourth Amendment to the United States Constitution to be free from excessive force and caused the decedent's death. (*See* Doc. 30 ¶¶

32, 36). Plaintiff also alleges that some unspecified policy, custom, or widespread practice of the City caused the alleged deprivation of the decedent's right under the Fourth Amendment to be free from excessive force. (*See* Doc. 30 ¶¶ 42-45). Plaintiff has sued, pursuant to 42 U.S.C. § 1983, each of the law enforcement officers allegedly involved in the physical altercation with the decedent. Plaintiff has also sued the City pursuant to section 1983.

As a result of the alleged subject incident, Plaintiff seeks compensatory damages from each of the defendants for the Estate of Donald Whitmer, Jr. and the decedent's survivors under the Florida Wrongful Death Act, section 768.16, Florida Statutes. (*See* Doc. 30 ¶¶ 33, 37, 45). Plaintiff also seeks punitive damages from the law enforcement officers allegedly involved in the physical altercation with the decedent. (*See* Doc. 30 at 8-10). The decedent's alleged survivors under the Florida Wrongful Death Act are seven of his children: Breanna Whitmer; Nicholas Whitmer; Donald Whitmer, III; Dakota Whitmer; Tommi Whitmer; Trey Whitmer; and Brittony Whitmer. (*See* Doc. 30 ¶ 7). Plaintiff alleges that at least one of the decedent's survivors was a minor. (*See* Doc. 30 ¶ 13). As a result of the alleged subject incident, Plaintiff seeks damages on behalf of the estate and the alleged survivors for mental pain and suffering, loss of companionship, medical and funeral expenses, loss of net accumulations, and "all other damages allowed by law." (Doc. 30 ¶¶ 33, 37, 45).

On January 3, 2020, the Court entered the Case Management and Scheduling Order. (*See* Doc. 26). The parties are currently conducting discovery, which will continue through the March 1, 2021 discovery deadline. (*See* Doc. 26 at 2).

### B. The City's Subpoena to Florida DCF

On August 14, 2020, the City notified all parties to the lawsuit of its intent to issue subpoenas for production of documents to several non-parties, one of which was the Florida

Department of Children and Families ("Florida DCF").  (*See* Ex. 1).[1]  Counsel for the City then transmitted the subpoena to Florida DCF on or about August 25, 2020, having received no objection to the subpoena from any party.[2]  Florida DCF responded to the subpoena by objecting and indicating that due to Florida law discussed in further detail below, Florida DCF could not produce documents in response to the subpoena.  Therefore, the City now moves pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure for a Court order directing production of documents pursuant to the subpoena.

### C. *State-Law Confidentiality and Procedure for Release of Florida DCF Records*

Section 39.202(1), Florida Statutes, provides that all records held by Florida DCF concerning reports of child abandonment, abuse, or neglect, including reports made to the central abuse hotline and all records generated as a result of such report, shall be confidential and exempt from Florida's Sunshine Law and shall not be disclosed except as specifically authorized by Chapter 39, Florida Statutes.  *See* Fla. Stat. § 39.202(1).  Despite such confidentiality, section 39.202(2)(f), provides for release of such records to the court for in camera inspection upon a court finding that access to such records may be necessary for the determination of an issue before the court.  *See* Fla. Stat. § 39.202(2)(f).  Then, upon determination through in camera inspection that disclosure of the information contained in the records is necessary for the resolution of an issue then pending before the court, the court may release the records.  *See* Fla. Stat. § 39.202(2)(f).

### D. *Rule 45 and State-Law Confidentiality Rules*

---

[1] Subpoenas to other non-parties that are unrelated to this motion have been removed from the original notice served upon all parties.  Additionally, to comply with Rule 5.2 of the Federal Rules of Civil Procedure, information has been redacted from the original subpoena noticed for and delivered to Florida DCF.

[2] Later, Plaintiff objected to the subpoena to Florida DCF and other non-parties but subsequently withdrew her objections.  (*See* Doc. 82; Doc. 86).

Where state-law confidentiality rules have threatened compliance with federal subpoenas, federal courts have routinely compelled compliance with the subpoenas under the authority of the Supremacy Clause, despite that doing so would violate the technical provisions of state law. *See In re Grand Jury Matter*, 762 F. Supp. 333, 335 (S.D. Fla. 1991); *see also Saucedo v. Gardner*, Civil No. 17-cv-183-LM, 2017 WL 10109878, at *3 (D.N.H. Oct. 27, 2017). Therefore, federal courts often compel production of records sought through subpoenas that state law otherwise designates as confidential, exempt from public disclosure, or both. *See id.*; *see also Spiegel v. Engagetel*, Case No. 15 C 1809, 2015 WL 8986932, at *3, 5 (N.D. Ill. Dec. 16, 2015) (compelling production of telephone subscriber information from telecommunications provider despite state law prohibiting disclosure); *Welch v. Logan Gen. Hosp., LLC*, 2015 WL 13386892, at *4 (S.D.W.V. Aug. 7, 2015) (compelling production of documents from state's unemployment compensation division despite state law); *Lamar v. Clayton Cty. Sch. Dist.*, Civil Action No. 1:13-cv-1600-RLV-ECS, 2014 WL 12650653, at *5 (N.D. Ga. Apr. 8, 2014) (compelling production of documents deemed confidential under Georgia law); *Kelley v. Billings Clinic*, No. CV 12-74-BLG-SHE-CSO, 2013 WL 2422705, at *4 (D. Mont. June 3, 2013) (compelling production of unemployment insurance records despite state law); *Furey v. Wolfe*, Civil Action No. 10-1820, 2012 WL 877115, at *5 (E.D. Penn. Mar. 15, 2012) (compelling disclosure of psychiatric and hospital records despite state law); *Hansen v. Allen Mem. Hosp.*, 141 F.R.D. 115, 124 (S.D. Iowa 1992).

This includes, among other things, records from state departments of children and family services. *See, e.g.*, *Mills v. Barnard*, Case No. 1:14-cv-150, 2016 WL 4466630, at *4 (M.D. Tenn. Aug. 24, 2016) (ordering disclosure of Tennessee Department of Children's Services records related to alleged abuse of a minor in federal civil rights action); *Grummons v.*

*Williamson Cty. Bd. of Educ.*, No. 3:13-1076, 2014 WL 1491092, at *3 (M.D. Tenn. Apr. 15, 2014) ("in an action involving violation of constitutional rights by an employee or agent of a governmental agency, the state interests in confidentiality of child abuse or neglect investigations must yield to the federal interests in securing evidence in federal civil rights litigation."); *see also Ledbetter v. City of Topeka*, No. CIV. A. 99-2489-CM, 2001 WL 311196, at *2 (D. Kan. Mar. 7, 2001); *Farley v. Farley*, 952 F. Supp. 1232, 1236 (M.D. Tenn. 1997) ("In federal civil rights actions, most courts that have taken up the issue of state privileges have concluded that state law must yield to the federal interest in full disclosure of all facts bearing upon the denial of federally-guaranteed rights.").

Therefore, the City seeks an order from the Court, pursuant to Rule 45(d)(2)(B)(i), compelling Florida DCF to produce all documents responsive to the City's subpoena directly to counsel for the City. The City requests that the Court order direct production to minimize judicial involvement in discovery and expedite the City obtaining the documents, as information contained therein may prompt additional, presently unanticipated discovery. In the alternative, the City seeks an order from the Court directing, pursuant to Rule 45(d)(2)(B)(i) and section 39.202(2)(f), Florida Statutes, Florida DCF to produce the documents responsive to the City's subpoena for an in camera inspection, with subsequent production of responsive documents to counsel for the City upon a judicial determination that disclosure of the information contained therein is necessary for the resolution of an issue pending before the Court.

### E. The Documents Sought are Discoverable

The documents sought by the City from Florida DCF are discoverable in this action. "The scope of discovery is broad." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, No. 6:16-cv-1033-Orl-41TBS, 2016 WL 9526313, at *2 (M.D. Fla. Oct. 19, 2016). "The broad scope of discovery

reflects the intent of the rules that trials in federal courts should be a search for the truth that is not 'carried on in the dark.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). In keeping with the spirit and purpose of the discovery rules, courts employ a liberal discovery standard. *Gov't Employees Ins. Co. v. Clear Vision Windshield Repair, LLC*, Case No. 6:16-cv-2077-Orl-28TBS, 2017 WL 7370979, at *2 (M.D. Fla. Mar. 20, 2017). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The documents the City has sought from Florida DCF are both relevant to the claims and defenses asserted in this action and are proportional to the needs of the case.

Under the Florida Wrongful Death Act, the decedent's alleged survivors may seek damages for loss of support and services, lost parental companionship, instruction, and guidance; and mental pain and suffering. *See* Fla. Stat. § 768.21.[3] The Florida Wrongful Death Act states: "In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the

---

[3] Discovery conducted to date has indicated that the decedent had no surviving spouse. *See* Fla. Stat. § 768.21(3); (Ex. 2 at 24:10-19).

decedent and the period of minority, in the case of healthy minor children, may be considered." Fla. Stat. § 768.21(1).[4]

The City seeks records from Florida DCF with the aim of obtaining evidence that may rebut one—but perhaps all—of the alleged survivors' claims for damages. Prior discovery and investigation by the City have indicated that between the decedent's eight known natural children, one or more states removed the children from the decedent's home and/or custody. The information received to date has indicated that the decedent's alleged survivors did not live with the decedent for at least significant portions of their respective childhoods. (*See* Ex. 2 at 39:4-40:18; Ex. 3 at 279:9-25; Ex. 4 at 40:16-41:15). Breanna Whitmer indicated during her deposition that some state removed the decedent's then-born children from the decedent's custody (and the custody of the decedent's predeceased spouse) because "they weren't stable" and because they "moved around a lot." (*See* Ex. 2 at 39:4-40:25). The decedent's youngest known natural child, P.W., a minor, was reportedly adopted by another family following being taken from the decedent by Florida DCF. (*See* Ex. 2 at 48:10-49:3; Ex. 4 at 41:4-43:10).[5] However, Breanna Whitmer claimed to not know any additional information about why the decedent lost custody of the alleged survivors, nor the status of the decedent's parental rights with respect to any of the decedent's natural children. (*See* Ex. 2 at 40:2-6, 48:19-49:3, 50:15-

---

[4] The Florida Wrongful Death Act fills the survival gap in 42 U.S.C. § 1983 with respect to causes of action arising in Florida and also defines the scope of damages available for section 1983 claims involving death of the alleged individual who was deprived of one or more federally-protected rights. *See Robertson v. Wegmann*, 436 U.S. 584, 591-94 (1978); *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1336-37 (N.D. Fla. 2017).

[5] It is important that the defendants confirm this supposed fact, since Florida law clearly provides that a minor child who has been legally adopted by another has no right of action for the subsequent alleged wrongful death of the child's natural parent. *See Gessner v. Powell*, 238 So. 2d 101, 101-02 (Fla. 1970); *see also* 17 Fla. Jur. 2d Decedents' Property § 57. For the same reason, it is essential that defendants be permitted to obtain Florida DCF's records to determine if the decedent's alleged survivors are in fact survivors under the Florida Wrongful Death Act.

24). Similarly, Plaintiff could not explain why Florida DCF took P.W. away from the decedent and why P.W. was later adopted by another family. (*See* Ex. 4 at 41:4-43:10). Such facts and circumstances can reasonably be anticipated to bear upon the alleged statutory survivors' claims for loss of support and services, lost parental companionship, instruction, and guidance; and mental pain and suffering.

Specifically regarding Breanna Whitmer, prior discovery has indicated that Breanna Whitmer is "supposed to be in counseling" "because [her] caseworker wants [her] to see a counselor" supposedly as a result of the subject incident. (*See* Ex. 2 at 62:11-63:12). Separately in her deposition, Breanna Whitmer indicated she *did* receive one session of mental health counseling subsequent to the subject incident. (Ex. 2 at 176:7-177:19, 178:6-179:25). Because it appears from Breanna Whitmer's deposition testimony that her Florida DCF caseworker may have referred her for mental health counseling, the documents the City has sought from Florida DCF are relevant to Breanna Whitmer's claims for lost parental companionship, instruction, and guidance and mental pain and suffering. Such records may rebut—or may support—Breanna Whitmer's claimed loss of parental companionship, instruction, and guidance and mental pain and suffering. Furthermore, Breanna Whitmer's records related to supposed counseling may support (or perhaps rebut) the City's, Defendant Jacob Mathis', and Defendant Kevin Krukoski's failure-to-mitigate affirmative defenses. (*See* Doc. 35 at 6 ¶ 10; Doc. 36 ¶ 53; Doc. 37 ¶ 53).

Additionally, the City's investigation of this action has revealed an incident, predating the subject incident, in which the decedent apparently overdosed on an illegal drug at a motel in the City of Cocoa, reportedly threatened to harm himself, physically struggled against responding law enforcement officers, was detained pursuant to Florida's Baker Act, and then was admitted into a hospital. (*See* Ex. 5 at 1-3). Breanna Whitmer was with the decedent during that incident

and was a minor at the time. (*See* Ex. 5 at 1-3). Because responding law enforcement officers could not contact another adult family member and because Breanna Whitmer had an active arrest warrant, Breanna Whitmer was detained, transported to Brevard County's juvenile detention center, and then placed in a youth shelter by Florida DCF. (*See* Ex. 5 at 1-3). While the decedent was admitted to the hospital, a nurse reported to the Cocoa Police Department and Florida DCF that the Plaintiff stated that decedent had abused Breanna Whitmer and used illegal drugs with Breanna Whitmer. (*See* Ex. 5 at 1-3)[6] Therefore, the City seeks Florida DCF's records regarding the report and investigation of reported abuse between Breanna Whitmer and the decedent. Such information, if confirmed and evidenced by Florida DCF's records, would rebut Breanna Whitmer's claimed damages for lost parental companionship, instruction, and guidance and mental pain and suffering.

Regarding the alleged survivors' claims for lost support and services, Florida DCF's files may indicate whether the decedent ever had to be ordered to provide support for one or more of the alleged survivors and, if so, whether the decedent complied with any such order.

Finally, Plaintiff's[7] and Breanna Whitmer's claimed lack of knowledge regarding information important to potentially rebutting the alleged survivors' claims for damages augments the need for the information sought from Florida DCF. That is, the documents sought by the City from Florida DCF are proportional to the needs of the case, particularly given the

---

[6] The documents that the City has obtained to date regarding such report are redacted because they were produced in response to a Chapter 119, Florida Statutes, public records request. However, the information related herein can be reasonably deduced from context and other, unredacted information about the incident.

[7] Plaintiff reportedly met the decedent in 2010. (Ex. 4 at 27:1-6). Plaintiff is the decedent's former girlfriend, although they were no longer romantically involved for some time before the subject incident occurred. (*See* Ex. 4 at 50:8-52:19).

purportedly limited information available from Plaintiff and Breanna Whitmer regarding essential issues to the action.

### F. Local Rule 3.01(g) Certification

Prior to filing this motion, counsel for the City has conferred via telephone with counsel for all other parties and separately conferred via telephone with counsel for Florida DCF, T. Shane DeBoard. The parties' and Florida DCF's positions on this motion are:

1. Counsel for Mathis and Krukoski is unopposed to the relief requested herein.

2. Counsel for Plaintiff is opposed to the City's request for an order requiring direct production of responsive documents but unopposed to an order directing, pursuant to section 39.202(2)(f), Florida Statutes, an in camera inspection and production of responsive documents upon a judicial determination that disclosure of the information contained therein is necessary for the resolution of an issue pending before the Court.

3. Counsel for Florida DCF is opposed to the City's request for an order requiring direct production of responsive documents but unopposed to an order directing, pursuant to section 39.202(2)(f), Florida Statutes, an in camera inspection and production of responsive documents upon a judicial determination that disclosure of the information contained therein is necessary for the resolution of an issue pending before the Court.

### G. Conclusion and Request for Relief

The documents sought by the City from Florida DCF are relevant, proportional to the needs of this case, and the City's access to such records is necessary for the determination of issues before the court

WHEREFORE, Defendant City of West Melbourne respectfully requests that the Court enter an order compelling the Florida Department of Children and Families to produce all

documents responsive to the City's subpoena directly to counsel for the City, or in the alternative, enter an order pursuant to section 39.202(2)(f), Florida Statutes, directing the Florida Department of Children and Families to produce the documents responsive to the City's subpoena for an in camera inspection, with subsequent production of responsive documents to counsel for the City upon a judicial determination that disclosure of the information contained therein is necessary for the resolution of an issue pending before the Court and for any other relief the Court deems just and proper.

Respectfully submitted,

*/s/ Frank Mari*
Michael J. Roper, Esquire
Florida Bar No. 0473227
Frank M. Mari, Esquire
Florida Bar No. 93243
Bell & Roper, P.A.
2707 E. Jefferson Street
Orlando, FL  32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
mroper@bellroperlaw.com
fmari@bellroperlaw.com
Secondary: phermosa@bellroperlaw.com;
ihaines@bellroperlaw.com
Attorney for Defendant City of West Melbourne

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and served a copy via email upon the following non-CM/ECF participant:

T. Shane DeBoard, Regional Counsel
Florida Department of Children & Families
400 West Robinson Street, S1129
Orlando, FL 32801
Shane.deboard@myflfamilies.com; logan.bartholomew@myflfamilies.com

/s/ *Frank Mari*
Michael J. Roper, Esquire
Florida Bar No. 0473227
Frank M. Mari, Esquire
Florida Bar No. 93243
Bell & Roper, P.A.
2707 E. Jefferson Street
Orlando, FL  32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
mroper@bellroperlaw.com
fmari@bellroperlaw.com
Secondary: phermosa@bellroperlaw.com;
ihaines@bellroperlaw.com
Attorney for Defendant City of West Melbourne