UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| DIANNE LEVESQUE, as Personal Representative of the Estate of Donald Whitmer, Jr., | Case No. 6:19-cv-2187-Orl-40DCI |
| Plaintiff, | |
| v. | |
| CITY OF WEST MELBOURNE, JACOB MATHIS, and KEVIN KRUKOWSKI, | |
| Defendants. _____/ | |

## **DEFENDANT CITY OF WEST MELBOURNE, DEFENDANT JACOB MATHIS, AND DEFENDANT KEVIN KRUKOSKI'S TIME-SENSITIVE MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW**

COME NOW, Defendant City of West Melbourne (the "City"), Defendant Jacob Mathis, and Defendant Kevin Krukoski, by and through their respective undersigned attorneys, hereby file and serve their Motion to Quash Subpoena and for Protective Order and Incorporated Memorandum of Law.

Defendants have titled this motion time-sensitive because Defendants seek relief with respect to an inspection scheduled unilaterally by Plaintiff to occur on February 3, 2021—prior to expiration of the 14-day deadline for Plaintiff to file a written response in opposition to this motion.

### A. *Alleged Factual Background*

Plaintiff Dianne Levesque is the Personal Representative of the Estate of Donald Whitmer, Jr. (Doc. 30 ¶ 7). Plaintiff alleges that on May 21, 2018, the decedent was involved in physical altercation with law enforcement officers at a Publix Supermarket located at 2261 West New Haven Avenue in West Melbourne, Florida. (*See* Doc. 30 ¶¶ 14, 21-22). Plaintiff alleges that the law enforcement officers involved in the incident violated the decedent's right under the Fourth Amendment to the United States Constitution to be free from excessive force and caused the decedent's death. (*See* Doc. 30 ¶¶ 32, 36). Plaintiff also alleges that some unspecified policy, custom, or widespread practice of the City caused the alleged deprivation of the decedent's right under the Fourth Amendment to be free from excessive force. (*See* Doc. 30 ¶¶ 42-45). Plaintiff has sued, pursuant to 42 U.S.C. § 1983, each of the law enforcement officers allegedly involved in the physical altercation with the decedent. Plaintiff has also sued the City pursuant to section 1983.

As a result of the alleged subject incident, Plaintiff seeks compensatory damages from each of the defendants for the Estate of Donald Whitmer, Jr. and the decedent's survivors under the Florida Wrongful Death Act, section 768.16, Florida Statutes. (*See* Doc. 30 ¶¶ 33, 37, 45). Plaintiff also seeks punitive damages from the law enforcement officers allegedly involved in the physical altercation with the decedent. (*See* Doc. 30 at 8-10). The decedent's alleged survivors under the Florida Wrongful Death Act are seven of his children. (*See* Doc. 30 ¶ 7). As a result of the alleged subject incident, Plaintiff seeks damages on behalf of the estate and the alleged survivors for mental

pain and suffering, loss of companionship, medical and funeral expenses, loss of net accumulations, and "all other damages allowed by law." (Doc. 30 ¶¶ 33, 37, 45).

### B. *Procedural History*

Plaintiff filed this action in state court on October 28, 2019. The City removed this action to this Court on November 18, 2019. (*See* Doc. 1 at 1). On January 3, 2020, the Court entered the Case Management and Scheduling Order. (*See* Doc. 26). The Case Management and Scheduling Order required Plaintiff to disclose expert reports and fully comply with Rules 26(a)(2) and 26(e) of the Federal Rules of Civil Procedure on or before January 1, 2021. (*See* Doc. 26 at 1, 5). Defendants' expert reports are due on or before February 1, 2021. (*See* Doc. 26 at 1). The discovery deadline is March 1, 2021. (*See* Doc. 26 at 2). Dispositive motions and *Daubert* motions are due on or before April 1, 2021. (*See* Doc. 26 at 2). This case is set for trial during the Court's trial term beginning on August 2, 2021. (*See* Doc. 26 at 3).

### C. *Prior Examination and Study of the Decedent's Body*

On May 22, 2018, Dr. Sajid S. Qaiser, M.D., Medical Examiner for Florida's Eighteenth District, performed an autopsy upon the decedent's body. (*See* Ex. 2 at 1). The Medical Examiner concluded that the decedent died from agitated delirium and complications due to amphetamine and methamphetamine toxicity with opioids toxicity, coronary bridging, lung adhesions, overweight, and hypertension as other significant conditions. (*See* Ex. 2 at 1). As part of the autopsy, the Medical Examiner dissected the decedent's neck and reported:

> Layer by layer examination of neck is grossly unremarkable for any gross trauma. The hyoid bone, larynx and cervical spine are grossly intact. The soft tissues, including the skeletal muscles, blood vessels, thyroid and connective tissues are grossly unremarkable.

(Ex. 2 at 3). The Medical Examiner's also examined the decedent's head and found that it was generally normal and unremarkable. (*See* Ex. 2 at 3). The Medical Examiner examined multiple sections of the decedent's brain and found the brain tissues to be essentially unremarkable. (*See* Ex. 2 at 5).

Plaintiff, through Plaintiff's attorney, had a "second" or "independent" autopsy performed on the decedent's body on June 2, 2018 by Julia Hegert, M.D. and Rodrigo Murillo, M.D., who issued a report. (*See* Ex. 3 at 1-9). With respect to the decedent's neck, Dr. Hegert and Dr. Murillo reported no soft tissue injury was evident but that the hyoid bone, larynx, and proximal trachea were absent. (*See* Ex. 3 at 7). By letter dated June 4, 2018, Plaintiff's attorney wrote the Medical Examiner to inquire why the Medical Examiner's Office released the decedent's body but retained the decedent's brain, hyoid bone, and larynx. (*See* Ex. 2 at 19). The Medical Examiner responded on June 7, 2018 by referring Plaintiff's attorney to section 406.11, Florida Statutes, with a copy of the statute. (*See* Ex. 2 at 17). Section 11G-2.004(4), Florida Administrative Code, provides: "Requests for independent examination and analysis of physical evidence in the custody of the medical examiner shall be allowed by the medical examiner under his or her supervision and control in a manner designed to provide maximal preservation of the physical evidence. Unless compelling reasons dictate, irreplaceable, non-duplicable and non-divisible physical evidence such as

embedded tissue shall not be released for independent analysis and examination." Section 11G-2.004(7)(b)(1), Florida Administrative Code, provides that permission of the legally authorized person is not required for a medical examiner to retain organs, tissues, sections, or fluids.

### D. *Plaintiff's Subpoena to the Medical Examiner*

On Saturday, January 16, 2021, Plaintiff notified all parties of a subpoena issued by Plaintiff to the Office of the Medical Examiner, Dr. Sajid S. Qaiser, M.D. (*See* Ex. 1).[1] It is presently unknown to counsel for Defendants whether, and if so when, Plaintiff served the subpoena upon the Medical Examiner. Plaintiff's subpoena seeks an inspection of premises and production of documents from the Medical Examiner. Regarding the inspection, Plaintiff seeks: "Allow for entry on to the premises described in the Subpoena [1750 Cedar Street Rockledge, Florida 32955] by Plaintiff's expert, Plaintiff's Attorney and or other designees to view, inspect, handle and otherwise study, measure, survey, photograph, non-destructive testing, and or sample the decedent's brain, Hyoid bone, and other remains of the decedent above in your possession, custody or control." (Ex. 1 at 4, 7). Plaintiff's subpoena purports to command such inspection on February 3, 2021 at 11:00 a.m. (*See* Ex. 1 at 4). Plaintiff purported to set the date of the inspection without any attempt to coordinate with opposing counsel.

---

[1] To comply with Rule 5.2 of the Federal Rules of Civil Procedure, some personally identifying information has been redacted from the subpoena.

*E. Argument*

Defendants now move pursuant to Rules 45(d)(3) and 26(c) of the Federal Rules of Civil Procedure to quash Plaintiff's subpoena to the Medical Examiner insofar as it seeks inspection (*see* Ex. 1 at 4, 7 ¶ 2). and for a protective order.[2] Although the subpoena seeks inspection from a non-party, a party may request a protective order for a subpoena to a non-party if the subpoena seeks materials that are not relevant. *Malibu Media, LLC v. John Does 1-35*, Case No. 2:12-cv-178-FtM-99DNF, 2012 WL 4513050, at *5 (M.D. Fla. Aug. 15, 2012). Rule 26(b)(1) limits discovery to any nonprivileged manner that is relevant to any party's claim or defense and proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 45(d)(1) requires that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expenses on a person subject to the subpoena. Rule 34(b) requires that a request for inspection of premises must specify a reasonable time, place, and manner for the inspection and for performing the related acts. Under Rule 26(c), the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including through forbidding the disclosure or discovery. *See* Fed.

---

[2] That is, Defendants do not challenge the subpoena insofar as it seeks production of specified documents, electronically-stored information, or both. (*See* Ex. 1 at 7 ¶¶ 1, 3).

R. Civ. P. 26(c)(1). "A district court has broad discretion when fashioning protective orders." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 357 (11th Cir. 1987).

In this case, the Court should not permit Plaintiff's proposed inspection because such inspection would not yield information that would be relevant and proportional to the needs of the case, and the proposed inspection would therefore amount to an undue burden upon the Medical Examiner and defendants. The deadline by which Plaintiff was due to disclose expert reports and fully comply with Rules 26(a)(2) and 26(e) of the Federal Rules of Civil Procedure was January 1, 2021. (*See* Doc. 26 at 1, 5). Plaintiff did not serve any expert report on or before that deadline. As of the filing of this motion, Plaintiff has not served any such expert report or sought an extension of time by which to serve any expert report.

The Case Management and Scheduling Report is clear: "Expert testimony on direct examination at trial will be limited to the opinions, bases, reasons, data, and other information in the written expert report disclosed pursuant to this Order." (Doc. 26 at 5). "Litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril." *United States v. Marder*, 318 F.R.D. 186, 190 (S.D. Fla. 2016). "[A] scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1." *Id.* "'Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational.'" *Makas v. State Farm Mut. Auto. Ins. Co.*, No. 8:15-cv-2940-30MAP, 2017 WL 2598497, at *3 (M.D. Fla. Feb. 17, 2017)

(quoting *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008)); *see also Marder*, 318 F.R.D. at 192 (stating that the purpose of the rule governing expert witness disclosure requirements is to safeguard against surprise).

It is clear that testing, study, or examination by an expert must be completed prior to the deadline for expert reports. *See, e.g., North v. Precision Airmotive Corp.*, Case No. 6:08-cv-2020-Orl-31DAB, 2011 WL 845851, at *3 (M.D. Fla. Mar. 8, 2011) (information generated by post-deadline tests would not be admitted at trial and no expert was permitted to base an opinion on such information); *see also Rodriguez v. GEICO Gen. Ins. Co.*, Case No. 6:19-cv-1862-Orl-40GJK, 2020 WL 5983334, at *1 (M.D. Fla. June 25, 2020); *Hughes v. GEICO Gen. Ins. Co.*, 2018 WL 490506, at *2-3 (M.D. Fla. Jan. 19, 2018) (excluding testimony from expert witness who engaged in "substantial and untimely" testing after retaining party's expert report deadline); *Cochran v. Brinkmann Corp.*, Case No. 1:08-cv-1790-WSD, 2009 WL 4823858, at *7 (N.D. Ga. Dec. 9, 2009) (excluding testing and supplemental reports completed by expert after retaining party's expert disclosure deadline). So, inspection conducted after Plaintiff's expert disclosure and report deadline cannot be used by Plaintiff to discover information to be used to form any opinion by any would-be expert of Plaintiff and could not be admitted at trial through any would-be expert of Plaintiff. Worse yet, Plaintiff's inspection would occur after the deadline for defendants' disclosure of experts and expert reports, depriving defendants, in an improper and unfairly prejudicial manner, of any opportunity to have their own expert(s) be present for and participate in an inspection at the same time as Plaintiff's would-be expert and

potentially render defendants' expert(s)' own opinions regarding the findings and opinions of Plaintiff's would-be expert.[3] Clearly, Plaintiff's proposed inspection significantly threatens needlessly upending the Case Management and Scheduling Order. *See Dickerson v. Barancik*, Case No. 8:18-cv-895-T-36JSS, 2019 WL 7938091, at *4 (M.D. Fla. Nov. 8, 2019) (disruption of the existing scheduling order amounts to harm under Rule 37(c)(1)). In *Beauregard v. Continental Tire N. Am., Inc.*, Case No. 3:08-cv-37-J-32HTS, 2009 WL 10705920, at *2-3 (M.D. Fla. Apr. 9, 2009), this Court declined to permit testing by an expert after the deadline for submitting expert reports. The Court should reach the same result in this case.

Additionally, the Court should not permit Plaintiff's attorney(s), "other designees[,]" or both to inspect, handle, test, or sample the "decedent's brain, Hyoid bone, and other remains of the decedent" because the items sought for inspection, handling, testing, or sampling are sensitive and fragile and therefore should not be inspected, handled, tested, or sampled by any individual lacking sufficient training and experience to do so appropriately. Furthermore, it is unclear what the Plaintiff means by "sampling" of the items retained by the Medical Examiner and whether such would be conducted in a destructive or non-destructive manner. Certainly, any inspection, handling, testing, or sampling by Plaintiff's would-be expert, Plaintiff's attorneys, or "other designees" of any of the items retained by the Medical Examiner that would

---

[3] This is putting aside but certainly not ignoring or disregarding the fact that Plaintiff scheduled the inspection without attempting to coordinate a date and time for the inspection that might permit defendants' expert(s) to attend and participate contemporaneously with Plaintiff's would-be expert.

change or destroy any of those items would be improper. *See Beauregard*, 2009 WL 10705920, at *2-3.

Finally, there is no reason known to Defendants why Plaintiff failed to conduct the requested inspection earlier during the discovery phase of this action. Since immediately after the decedent's death and long prior to the time Plaintiff initiated this action, Plaintiff has been aware that the Medical Examiner was in possession of retained items from the autopsy performed upon the decedent's body. (*See* Ex. 2 at 19). Discovery has been available in this action since the parties completed their case management conference on December 10, 2019. *See* Fed. R. Civ. P. 26(d)(1); (Doc. 21 at 3). Yet Plaintiff failed to even mention inspection of items retained by the Medical Examiner until after Plaintiff's expert disclosure and report deadline had passed. Then, Plaintiff scheduled—unilaterally and without consulting counsel for defendants—the inspection to occur after all parties' expert disclosure and report deadlines had passed. Defendants respectfully maintain that there no good cause or substantial justification for Plaintiff proceeding in such manner. Therefore, the Court should quash Plaintiff's subpoena to the Medical Examiner insofar as it seeks inspection and issue a protective order.

### F. Local Rule 3.01(g) Certification

The undersigned attorneys hereby certify that, pursuant to Local Rule 3.01(g) of the United States District Court for the Middle District of Florida, the undersigned attorneys conferred with counsel for Plaintiff via telephone on January 19, 2021,

regarding the relief requested in this Motion. Counsel for Plaintiff and counsel for Defendants were unable to agree on a resolution of this motion.

### G. *Request for Relief*

WHEREFORE, Defendant City of West Melbourne, Defendant Jacob Mathis, and Defendant Kevin Krukoski respectfully request that the Court enter an order quashing Plaintiff Dianne Levesque's subpoena to the Office of the Medical Examiner, Dr. Sajid S. Qaiser, M.D. insofar as the subpoena seeks inspection and enter a protective order prohibiting such inspection and any other further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Frank Mari*
Frank M. Mari, Esquire
Florida Bar No. 93243
Bell & Roper, P.A.
2707 E. Jefferson Street
Orlando, FL 32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
fmari@bellroperlaw.com
Secondary: ihaines@bellroperlaw.com
Attorney for Defendant City of West Melbourne

*/s/ Andrea G. Amigo*
LYMAN H. REYNOLDS, JR.
FBN: 380687
ANDREA G. AMIGO
Florida Bar No.: 11026
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Drive, Bldg. C101
West Palm Beach, FL 33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com

Email: lreynolds@rrbpa.com;
aamigo@rrbpa.com
Attorney for Defendant Jacob Mathis and Defendant Kevin Krukoski
(signed by filing attorney with permission of Andrea G. Amigo)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

<u>/s/ *Frank Mari*</u>
Frank M. Mari, Esquire
Florida Bar No. 93243
Bell & Roper, P.A.
2707 E. Jefferson Street
Orlando, FL 32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
fmari@bellroperlaw.com
Secondary: ihaines@bellroperlaw.com
Attorney for Defendant City of West Melbourne